**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION**

| | | |
|---|---|---|
| **GERALD E BROCKINGTON,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 5:14-cv-38 (MTT) (CHW)** |
| | : | |
| **Officer JOSEPH STANCO**, *et al.*, | : | **Proceedings Under 42 U.S.C. § 1983** |
| **Defendant.** | : | **Before the U.S. Magistrate Judge** |
| _____ | : | |

## REPORT AND RECOMMENDATION

Plaintiff Gerald Brockington, who is presently confined at Georgia State Prison, filed a pro se civil rights complaint under 42 U.S.C. § 1983 on January 27, 2014. Doc. 1. According to Plaintiff's Complaint, Officer Stanco reached into Plaintiff's cell through the "tray flap" and slammed his arm repeatedly in the opening. Following the adoption of the Magistrate Judge's frivolity review pursuant to 28 U.S.C. § 1915A, Defendant filed his Answer on May 21, 2015. Doc. 28. Defendant filed his Motion for Summary Judgment on October 29, 2015 (Doc. 38) at the conclusion of discovery, and Brockington has filed his response (Doc. 44).

Defendant raises the following arguments in support of his Motion for Summary Judgment: (1) Plaintiff fails to state a claim upon which relief may be granted (Doc. 38-2, pp. 3-6); (2) Defendant's conduct did not cause Plaintiff's alleged injury (Doc. 38-2, p. 6); and (3) the PLRA bars Plaintiff's claims for compensatory damages (Doc. 38-2, pp. 7-9). As Brockington does not present a genuine of material fact as to whether the force used was excessive, and Defendant is entitled judgment as a matter of law, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. 38) be **GRANTED**.

# I. SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986), and *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989).

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See *id.* (citing *Celotex v. Catrett*, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. *Peek–A–Boo Lounge of Bradenton, Inc. v. Manatee Co., Fla.*, 630 F.3d 1346, 1353 (11th Cir. 2011). However, "unsworn statements, even from *pro se* parties, should not be 'consider[ed] in determining the propriety of summary judgment.'" *McCaskill v. Ray*, 279

F. App'x 913, 915 (11th Cir. 2008) (quoting *Gordon v. Watson,* 622 F.2d 120, 123 (5th Cir.1980)).

## II. FACTS

On Tuesday, February 5, 2013, Plaintiff, Gerald Brockington, joined his fellow inmates at Macon State Prison out "on the yard" while new locker boxes were being installed in their cells. Pl.'s Dep. 26, 2-3. Upon return to his cell, Brockington found that the dust left from the installation of the lockers caused problems with his asthma condition. Pl.'s Dep. 39, 20. In an effort to inform the proper authorities, Brockington placed his arm through the tray flap in his door and began to wave it outside of his cell, indicating that he requested to speak to an officer. Pl.'s Dep. 26, 3-23. Under Macon State Prison policy, an inmate is not allowed to waive an arm through the flap of his cell door. Pl.'s Dep. 37, 16-25.

When Defendant Stanco came to Brockington's cell, he asked Brockington to put his arm back in the cell. Pl.'s Dep. 37, 8-10. Brockington did not comply with Defendant Stanco's request, but instead continued to waive his arm through the flap. Pl's Dep. 38, 6-8. Officer Stanco then proceeded to "slam" Brockington's arm in the flap and "used his knee to apply pressure." Pl.'s Dep. 27, 1-5.  After "three to five minutes of [Defendant Stanco] holding [the tray flap] on [Brockington's] arm, … [Defendant] released the flap up and [Brockington] pulled [his] arm out and [Defendant] closed the flap." Pl.'s Dep. 27, 12-14.

After the incident Brockington repeatedly asked for a supervisor and to be seen by a member of the medical staff. Pl.'s Dep. 27, 15-18. However, Defendant Stanco did not call anyone. *Id.* Instead, he continued to walk by Brockington's cell and told Brockington that he wasn't going to call a supervisor or medical. Pl.'s Dep. 27, 19-22. Brockington asked for a grievance, which Defendant also refused at the time. Pl.'s Dep. 46, 18.

Brockington was seen by a nurse the following day, February 6, for a use of force assessment. Aff. of Dean Broom, Doc. 38-3, p. 3. The nurse found a "superficial" scratch on Brockington's upper right arm and noted that Brockington complained of numbness. Use of Force Assessment, Doc. 38-3, p. 5. On February 7, Brockington was seen by medical again, this time in regard to a musculoskeletal complaint assessment. Nursing Assessment, Doc. 38-3, p. 6. At that time it was found that Brockington could not fully extend his right arm or flex his left arm. *Id.* The assessment also noted numbness and tingling in Brockington's right arm. *Id.* He was prescribed 200 milligrams of Ibuprofen every six hours for pain. *Id.*

Brockington has since been seen regularly by the medical staff at Macon State Prison; Baldwin State Prison; and Georgia State Prison presenting with complaints of numbness; pain; and tingling in his right arm and hand, and on occasion, in his left arm and hand. Doc. 38-3, p. 3; Plaintiff's Medical Records, Doc. 38-3, pp. 6-15. On March 24, 2014, a radiograph of Brockington's right hand showed normal findings. Radiology Report, Doc. 38-3, p. 16. Upon referral from Dr. Broome at Georgia State Prison, on April 17, 2014, imaging of Brockington's cervical spine revealed degenerative disc disease with cervical spasm. Doc. 38-3, pp. 3- 4; Radiology Report, Doc. 38-3, p. 21. On February 12, 2015, Brockington was also diagnosed with carpal tunnel syndrome. Doc. 38-3, p. 4.

### III. EXCESSIVE FORCE & THE EIGHTH AMENDMENT

Brockington's claim against Officer Stanco implicates the Eighth Amendment: "the treatment a prisoner receives in prison ... [is] subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (citation omitted). An Eighth Amendment violation is cognizable under 42 U.S.C. § 1983. *Hale v. Tallapoosa Cnty.,* 50 F.3d 1579, 1582 (11th Cir. 1995). "The eighth amendment prohibition against cruel and unusual punishment is

triggered when a prisoner is subjected to a[n] 'unnecessary and wanton infliction of pain.'" *Bennett v. Parker,* 898 F.2d 1530, 1532 (11th Cir. 1990).

To establish a claim for excessive force, a plaintiff must show that: (1) the Defendant acted with a malicious and sadistic purpose to inflict harm and (2) more than *de minimis* injury resulted. *Johnson,* 280 F.3d at 1321 (11th Cir. 2002). The Supreme Court has clarified that "[t]he 'core judicial inquiry' ... [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian,* 503 U.S. 1, 7 (1992)). Although the extent of any injury is not alone dispositive of an excessive force case, it is "one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." *Hudson,* 503 U.S. at 7 (*quoting Whitley v. Albers,* 475 U.S. 312, 321 (1986)). Not "every malevolent touch by a prison guard" or "every push or shove" violates a prisoner's constitutional rights, and the "prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. 9–10 (1992) (citations omitted). Although injuries need not be severe to support an excessive force claim, the failure to show any injury indicates that the force was not so excessive as to violate the prohibition against an unnecessary and wanton infliction of pain. *Id.* at 10.

In determining whether the force was applied "maliciously and sadistically to cause harm," this court considers: a) the need for the application of force; b) the relationship between the need and the amount of force that was used; c) the extent of the injury inflicted upon the prisoner; d) the extent of the threat to the safety of staff and inmates; and e) any efforts made to

temper the severity of a forceful response. *Whitley v. Albers*, 475 U.S. 312, 321(1986); *Hudson*, 503 U.S. at 7. Further, Courts are to "give a wide range of deference to prison officials acting to preserve discipline and security." *Id*. The determination "must not be made in the glow of hindsight." *Griffin v. Troy State Univ.*, 128 Fed. App'x. 739, 742 (11th Cir. 2005) (citation omitted). Instead, the relevant inquiry is whether the decision by the government official was egregious, that is, conscience-shocking, at the time the official made the decision. *Id*. "Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain . . . the case should not go to the jury." *Whitley*, 475 U.S. at 322.

Defendant has submitted various documents, affidavits, and Plaintiff's deposition to support his argument that he is entitled to the entry of summary judgment in regard to the Plaintiff's claim of excessive force. Doc. 38. Plaintiff responded with thirteen separate documents as well as his own affidavit for the court to consider. Doc. 44. Because the evidence fails to support a finding that the Defendant acted with a malicious and sadistic purpose to inflict harm as the *Whitley* factors weigh in favor of not finding a constitutional violation, Defendant's Motion for Summary Judgment on Plaintiff's excessive force claim should be granted.

### A. The Need for Force

The evidence shows that Defendant Stanco had a legitimate need for force, as Plaintiff refused to remove his arm from the tray flap opening after Defendant Stanco made repeated requests for Plaintiff to do so, and that "buckling the flap" was against prison rules. Pl.'s Dep. 37, 10-18. The Eleventh Circuit has held that "[p]rison guards may use force when necessary to restore order." *Bennett*, 898 F.2d at 1533. The Circuit Court further adds: "[a]nd prison guards do not have the luxury or obligation to convince every inmate that their orders are reasonable and

well-thought out. Certainly they are not required to do so where an inmate repeatedly fails to follow those orders." *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008). The need for the use of force, the first factor to be considered in the excessive force analysis, is established "by the undisputed evidence that [the inmate] created a disturbance." *Bennett*, 898 F.2d at 1533. Thus, Defendant showed that the use of force was necessary due to Plaintiff's refusals to comply with Defendant's orders.

Plaintiff argues that Defendant "maliciously and sadistically" slammed his arm in the tray flap even though Defendant Stanco was "never threatened or saw Plaintiff with cup or trying to throw anything at him." Doc. 44, p. 4. However, Plaintiff's own deposition testimony supports the finding that Defendant used force to close the flap because Plaintiff refused to follow his instructions, not because Plaintiff "never threatened" Defendant. See *Helton v. Burks*, No. 1:11-CV-77 WLS, 2013 WL 6081764, at *4 (M.D. Ga. Nov. 19, 2013) (citing *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984) ("When an inmate refuse[s] to obey a proper order, he is attempting to assert his authority over a portion of the institution and its officials. Such refusal and denial of authority places the staff and other inmates in danger.")). Plaintiff also recognized in his deposition that holding his arm outside of his cell was a violation of established prison rules. Pl.'s Dep. 37, 18 ("you're not supposed to buck on the flap."); Pl.'s Dep. 38, 6-7 ("No, I was not supposed to have my arm out of the flap, but that's what I did."); Pl.'s Dep. 73, 1-2 ("it's not a part of the rules for me to buck on the flap."). Thus, finding that Defendant had a legitimate need for force weighs against a violation of Plaintiff's Eighth Amendment rights.

## B. The Relationship Between that Need and the Amount of Force Use

The force used in this incident was proportional to the need to use force. The medical evidence presented by both parties shows that Plaintiff suffered a "superficial scratch" as a result

of Defendant's actions. Yet, Plaintiff's testimony states that Officer Stanco "slam[med]" Plaintiff's arm in the flap and "used his knee to apply pressure." Pl.'s Dep. 27, 1-5. After "three to five minutes of [Defendant Stanco] holding [the tray flap] on [Plaintiff's] arm, … [Defendant] released the flap up and [Plaintiff] pulled [his] arm out and [Defendant] closed the flap." Pl.'s Dep. 27, 12-14.

This application of force was not disproportionate to the need to restore order and ensure compliance with orders and prison rules, and this factor does not weigh in favor of finding a constitutional violation. Compare *Johnson v. Moody*, 206 F. App'x 880, 882-84 (11th Cir. 2006) (Holding that the "[Guard']s kicking of the tray door with his foot … resulting in a minor injury" was proportional to inmate's refusal to remove arm from the tray flap, and recognizing that "…although [the Guard] arguably could have waited to see whether [Brockington] would remove his hand from the tray door completely, [Brockington] failed to produce evidence showing that this action was taken 'maliciously and sadistically for the very purpose of causing harm.'") with *Skrtich v. Thornton*, 280 F.3d 1295, 1302 (11th Cir. 2002) (determining that guards collective beatings resulting in "multiple rib fractures, back injuries, lacerations to the scalp, and abdominal injuries requiring hospitalization for nine days and rehabilitation for months" was not proportional to guards' order to submit to handcuffing.).

### C. *The Extent of the Resulting Injury*

The third *Whitley* factor—the extent of Plaintiff's injury from the incident—does not favor finding a constitutional violation. Although the "nature of the force rather than the extent of the injury" is the relevant inquiry in Eighth Amendment excessive force cases, the extent of injury is still a "factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." *Wilkins v. Gaddy*, 559 U.S. 34, 34-36 (2010)

(internal quotations and citation omitted). In most excessive force cases, the extent of injury caused by the alleged excessive force is apparent. See *Skrtich*, 280 F.3d at 1302, supra (prisoner suffered multiple rib fractures, back injuries, lacerations to the scalp, and abdominal injuries as a result of beating at the hands of prison officials). Here, the extent of injury inflicted by the Defendant's "slamming," the Plaintiff contends, is obvious. The Plaintiff states that while the medical examination reveal only "superficial scratches," Defendant Stanco's actions caused the numbness and tingling he has suffered—and continues to suffer from—in his right arm. Doc. 44, pp. 2- 9. He further states that "Defendant's actions caused injuries to Plaintiff that got worse over time." Doc. 44, p. 4. To sustain such a theory, however, the Plaintiff must produce evidence that the alleged constitutional violation he complains of caused Plaintiff's injuries. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1584 (11th Cir. 1995).[1]

Plaintiff presents no medical evidence in his thirteen exhibits that show a causal connection between the incident on February 5, 2013, and the numbness in his arm. However, the Defendant presents the affidavit of Dr. Broome, the Medical Director at Georgia State Prison. Doc. 38-3, p. 2. Dr. Broome bases his professional opinion on the medical records of Plaintiff as well as his personal knowledge of Plaintiff's medical history. Doc. 38-3, p. 3. Dr. Broome has treated Plaintiff "on many occasions since his arrival at GSP," and he is the physician who ordered the x-rays of Plaintiff's cervical spine. *Id.* Dr. Broome affirms that, in his medical opinion, Plaintiff's complaints of numbness and tingling are due to his degenerative back disease and carpal tunnel syndrome. See Doc. 38-3, p. 4.

In determining the extent of Plaintiff's injury, the Eleventh Circuit recognizes that this Court must look to both Plaintiff's subjective complaints and objective medical record, and if the

---

[1]    Defendant makes a separate argument as to causation in his Motion for Summary Judgment. See Doc. 38-2, p. 6. This Recommendation addresses the Defendant's causation argument in the context of the third *Whitley* factor.

two conflict, it must find in favor of the objective medical evidence. See *Johnson*, 206 Fed. App'x at 884 ("Although [Plaintiff] complained of pain for several months, the objective medical evidence does not support his subjective complaints"). In *Johnson*, the Circuit Court held that in a case involving alleged use of excessive force against an inmate, the extent of the plaintiff's injury, involving "only a superficial injury to his finger and fingernail," "showed that the force was not used maliciously and sadistically." *Id.* at 884. The court further recognized that the prisoner plaintiff's finger was injured when a metal tray door shut on his hand, which the plaintiff alleged as kicked shut by the defendant officer in an attempt to break the plaintiff's finger. The defendant officer alleged that the plaintiff had refused to move his hand out of the door when ordered to do so. In finding for the defendant officer, the court noted its prior holding that "an injury can be 'objectively, sufficiently serious' [to constitute a constitutional violation] only if there is more than de minimis injury." *Id.* (citing *Boxer v. Harris*, 437 F.3d 1107, 1111 (11th Cir. 2006.)

In light of the medical evidence before the Court, despite Plaintiff's complaints of numbness and tingling, the objective medical evidence does not support his complaints as medical staff noted Plaintiff suffered only a scratch, and that the numbness and tingling in his arm was due to his degenerative back disease and carpal tunnel syndrome. See Doc. 38-3, p. 4. Defendant has met his burden in showing that he did not cause Plaintiff's "lasting injuries" of numbness and tingling, and Plaintiff has not disputed that fact with evidence.[2] Accordingly, Plaintiff resulting injury was a "superficial scratch," and does not weigh in favor of finding a constitutional violation.

---

[2] Plaintiff's challenge that Dr. Broome was not his "treating physician" does not create a genuine issue of material fact as to whether Plaintiff's injury was caused by Defendant Stanco's actions. See Doc. 44, p. 3.

### D.  The Extent of the Threat to the Safety of Staff and Inmates

The fourth factor requires an assessment of "the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible official on the basis of facts known to them." *Whitley*, 475 U.S. at 321. Plaintiff's assertion addressing this factor simply states that Defendant's use of force was "unjustified." Doc. 44, p. 3. Yet, an inmate's refusal to comply with orders creates a threat to the safety of staff and inmates. *See, e.g., Danley,* 540 F.3d at 1308; *McClendon v. Smith,* at 2014 WL 575538 *6 (M.D.Ga. 2014).[3]

As discussed in the Court's analysis of the first factor, the need for force, Plaintiff's refusal to obey orders and established prison rules, created a disturbance and thus created a need for the use of force.[4] Plaintiff's refusal to follow orders posed a threat to the safety of staff and inmates in several ways. At least one officer's attention was diverted from maintaining security throughout the facility to the task of forcing Plaintiff to comply with orders. A single detainee's refusal to follow orders threatens to undermine officers' authority throughout a facility, and a detainee's non-violent protestations can easily escalate to physical resistance (and officers are not required to wait for this escalation before using physical force). See also *Brown v. Smith*, 813 F.2d 1187, 1189–90 (11th Cir. 1987) (judgment in favor of an officer who used force against an inmate to accomplish the "legitimate security purpose" of getting the inmate into his cell.). This Court has previously recognized that there are certain safety concerns associated with inmates not putting their arms through the tray flaps. See *Moore v. James*, No. 7:09-CV-98 HL, 2013 WL

---

[3]    This rule is tempered with the clarification that "officers cannot continue the use of force once the threat has passed or the prisoner is subdued." *Skritch,* 280 F.3d at 1303; *Campbell v. Sikes,* 169 F.3d 1353, 1374 (11th Cir. 1999).

[4]    This case is similar to *White v. Matti*, 2002 WL 31887792 (7th Cir. 2002) (unpublished), in which the plaintiff prisoner, just as in this action, put his right arm through the trap in his cell door and refused to return his arm into his cell. The plaintiff claimed that the defendant officers used excessive force when they "beat his hand with the plastic medication box, causing lacerations, bruises, cuts and swelling." *Id*. at *2. The Seventh Circuit, in determining that the plaintiff did not have a claim for excessive force, acknowledged that the plaintiff was violating prison rules by keeping his hand out of the trap door, that the proportionality of the force used to the threat posed was reasonable, and that the injuries were minor. *Id.*

1296775, at *1 (M.D. Ga. Mar. 27, 2013) ("for safety reasons it [is] important for the [tray] flap to stay closed when not in use.").[5] Further, Defendant Stanco did not continue the use of force once the threat passed and Plaintiff brought his arm back into the cell. See Pl.'s Dep. 26, 12-14. This factor weighs against the finding of a constitutional violation.

### E. Efforts to Temper the Severity of a Forceful Response

Finally, the Court considers efforts made by the officer to temper the severity of the force used against Plaintiff.  The record shows that Plaintiff was seen the next day for a full use of force examination. The Eleventh Circuit and this Court have both set out potential reactions when determining the efforts of a defendant to temper the severity of a forceful response. These efforts can include: ceasing the use of force once a detainee has been subdued, *Danley,* 540 F.3d at 1308–09; efforts to check on the detainee's wellbeing throughout the application of force, *Stanfill v. Talton,* 851 F.Supp.2d 1346, 1373 (M.D.Ga. 2002) (holding that checking on a prisoner every fifteen minutes while he was in a restraint chair constituted an effort to temper the severity of a forceful response); and post injury efforts to ameliorate the effects of force used, such as immediately summoning medical assistance. *Cockrell v. Sparks,* 510 F.3d 1307, 1312 (11th Cir. 2007).

---

[5]     District courts in other circuits have acknowledged that the practice of an inmate putting their arm through the cell door flap creates a threat of safety to other inmates and prison staff. See *Nelson v. Brandfass*, No. CA 6:12-1908-JFA-KFM, 2013 WL 877054, at *1 (D.S.C. Mar. 8, 2013) (recognizing that the procedure of requiring "an inmate [to] step back from the cell door flap, remain at a distance while the medical staff places the medication in the cell flap, and then the retrieve the medication" was "performed for the safety and security of the medical staff as a result of previous assaults by inmates through the cell flap during medication administrations.") *McCoy v. Anderson*, No. 4:11-CV-0773-JFA-TER, 2012 WL 3716958, at *5 (D.S.C. June 20, 2012), report and recommendation adopted, No. CA 4:11-773-JFA-TER, 2012 WL 3716601 (D.S.C. Aug. 28, 2012) (finding that "the flaps on the cells in SMU normally remain closed because, when left open, inmates have attempted to reach out and grab an officer or another inmate and have attempted to assault them."); *Boyd v. Selmer*, 842 F. Supp. 52, 56 (N.D.N.Y. 1994) (finding that a prior attempt by a prisoner to grab at an officer created a risk that justified the actions of officers in striking the plaintiff 3–4 times with their batons, and declining to find a violation of the Eighth Amendment.).

As discussed above, the use of force lasted less than five minutes and did not continue after Plaintiff pulled his arm back into his cell. Pl.'s Dep. 27, 12-14. Further, medical records show that Plaintiff was seen on both February 6 and February 7 to review Plaintiff's injuries from the actions of Defendant Stanco, and included a musculoskeletal evaluation. The findings from the evaluations revealed a superficial scratch as well as limited arm mobility, and subjective complaints of tingling and numbness. Uncontested testimony from Plaintiff reflects that Defendant Stanco refused to call medical immediately or to call a supervisor upon Plaintiff's request. Pl.'s Dep. 27, 19-22.

Given that Plaintiff's resulting injury was minimal—as discussed in the third *Whitley* factor—little effort was needed to mitigate the effects of the force that was applied. See *Fennell*, 559 F.3d at 1220 (recognizing that this "factor allows the court to take into account efforts by the [prison staff] to mitigate the effects of the force *that was applied*"). The parties have not proffered evidence on whether Defendant should have expended greater effort to mitigate the tray flap's effects. Given the low severity of the injury, the evidence reveals no impropriety and therefore cuts in Defendant's favor.

In light of the five factors considered above, no reasonable jury could find that Stanco was motivated by a malicious and sadistic intent to cause harm that shocks the conscience, rather than a good-faith effort to gain Brockington's compliance. There was a need for force, Brockington's disobedience posed a threat to both the prison guards and the prison population as a whole, the harm was minor, no medical assistance was required. Therefore, summary judgment is appropriate on Plaintiff's excessive force claim.

IV. RELIEF SOUGHT

Pursuant to § 1997e(e), "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). Although section 1997e(e) does not define what constitutes a physical injury, the Eleventh Circuit has concluded that in order to satisfy the statute "the physical injury must be more than *de minimis,* but need not be significant." *Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), vacated in part on other grounds, 216 F.3d 970 (11th Cir. 2000) (en banc); *see also Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312–1313 (11th Cir. 2002) ("In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than de minimis.") (citation omitted). Thus, in the Eleventh Circuit, it is clear that a prisoner must establish more than a *de minimis* physical injury to recover compensatory and punitive damages for any *mental or emotional* injury suffered. *See Mitchell*, 294 F.3d at 1312–13 (Section 1997e(e) requires showing of more than *de minimis* physical injury in order for plaintiff to proceed on claim for mental or emotional injury). In his Complaint, Plaintiff requests $150,000 in compensatory damages against Defendant Stanco for "pain and suffering, emotional distress, and depression." Doc. 1, p. 5. Such claims are barred by the PLRA and are thus not recoverable absent a showing of more than a *de minimis* injury.

CONCLUSION

As set out above, it is **RECOMMENDED** that Defendant's Motion for Summary Judgment (Doc. 38) be **GRANTED**. Pursuant to 28 U.S.C. 636(b)(1), the parties may serve and

file written objections to this **RECOMMENDATION** with the District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 25th day of May, 2016.


    s/ Charles H. Weigle
    Charles H. Weigle
    United States Magistrate Judge